United States District Court
District of Massachusetts

| | |
|---|---|
| Lyle Kurt Yearling )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Carolyn W. Colvin )<br>)<br>Defendant. )<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>16-11155-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Lyle Yearling ("Yearling" or "plaintiff") filed this action appealing the denial of his application for disability benefits against Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner" or "defendant"). He claims he was improperly denied Supplemental Security Income ("SSI") because the presiding Administrative Law Judge ("ALJ") failed to consider valid medical evidence and substituted his own lay knowledge for information on the record. On April 3, 2017, plaintiff's attorney filed a motion for an order reversing the decision of the Commissioner. Also pending before the Court is defendant's motion to affirm. For the reasons that follow,

the motion to reverse will be denied and the motion to affirm will be allowed.

## I. Background

### A. Employment History and Alleged Disability

Yearling was born on October 25, 1986. He alleges that he suffers from Osgood-Schlatter disease, severe bipolar disorder, panic disorder, generalized anxiety disorder and attention deficit disorder. He also notes a history of special education in school, physical abuse, violent outbursts, incarceration and treatment for ADHD and the other disorders from which he suffers. Yearling lacks any substantial work experience.

Yearling was incarcerated from June, 2013 through November, 2014. He contends that during his incarceration he met regularly with a psychiatrist who prescribed for him medicine for symptoms relating to his anti-social personality disorder, anxiety and difficulty sleeping. Following his release, Yearling met his primary care physician, Lakshmi Sivasankar, who prescribed pain medication for symptoms relating to Osgood-Schlatter disease. Dr. Sivasankar also referred him to a behavioral health specialist for further treatment of his psychiatric conditions.

Yearling saw several doctors for his various infirmities leading up to his application for SSI benefits. In August, 2015, psychologist Daniel R. Morocco evaluated Yearling and

administered an IQ test.  Yearling's full scale IQ measured 60, and Dr. Morocco diagnosed Yearling with a mild intellectual disability.

In January, 2016, psychiatrist William J. Meehan evaluated Yearling and concluded he would be unable to complete a normal work day.  The same month, Dr. Sivasankar evaluated Yearling and determined that, due to Yearling's physical symptoms, he would be incapable of even low stress jobs and would require many unscheduled breaks.

Yearling asserts that because of his physical and mental health problems he cannot be gainfully employed and that seeking treatment has not helped.

### B. Procedural Background

On December 1, 2014, plaintiff filed an application for SSI benefits under Title XVI of the Social Security Act ("the Act") in which he alleges that he is disabled because of the ailments described above.  The Social Security Administration ("SSA") denied his claim in April, 2015.  In July, 2015, the SSA reconsidered and denied plaintiff's claim again.  Plaintiff subsequently filed a request for a hearing which was held before ALJ John Benson in January, 2016.  Plaintiff was represented by counsel.  In February, 2016, the ALJ denied plaintiff's claim,

finding that plaintiff was not disabled as that term is defined by 42 U.S.C. § 404.1505(a) of the Act.

Plaintiff filed a timely request for review with the Appeals Council. That request was denied in April, 2016, rendering the ALJ's determination a final decision subject to judicial review. See <u>Da Rosa</u> v. <u>Sec'y of Health & Human Servs.</u>, 803 F.2d 24, 25 (1st Cir. 1986).

Plaintiff filed his complaint with this Court in June, 2016. The Commissioner filed a motion to dismiss for failure to state a claim upon which relief can be granted in September, 2016. That motion was denied in November, 2016. Plaintiff filed a motion to reverse the Commissioner's decision in April, 2017. The Commissioner filed a motion to affirm in June, 2017. Both motions are the subject of this memorandum.

## II. **Defendant's Motions to Dismiss**

### A.   Legal Standard

To obtain benefits under § 1602 of the Act, 42 U.S.C. § 1381a, an individual must demonstrate that he is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). The impairment must be of such severity that the claimant is not only unable to continue his previous work but also unable to engage in other

kinds of substantial work that exist in the national economy fitting his age, education and work experience. 42 U.S.C. § 423(d)(2)(A).

The Act gives United States District Courts ("District Courts") the power to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). A District Court's review of an ALJ decision is not, however, de novo. See Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Act provides that the findings of the Commissioner are conclusive if 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. See 42 U.S.C. § 405(g); Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001). If those criteria are satisfied, the Court must uphold the Commissioner's decision even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. See Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

**B. Application**

Yearling avers that the ALJ erred in denying his claim for benefits because: 1) the ALJ failed to consider Dr. Morocco's IQ

test and connected diagnosis and 2) the ALJ improperly used his own knowledge to craft plaintiff's residual functional capacity ("RFC"). Accordingly, Yearling asserts that the decision of the Commissioner to deny him SSI benefits should be reversed.

The Commissioner responds that Yearling failed to demonstrate the ALJ's medical impairment determination and RFC determinations were unsupported by substantial evidence.

### 1. The IQ Test

Yearling first contends that the ALJ erred in concluding he did not have a qualifying medical impairment because the ALJ failed to consider his IQ score and diagnosed intellectual disability. He maintains that in doing so, the ALJ improperly found Yearling's impairments do not constitute one of the impairments listed under Listing 12.05(C) in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (listings).

A finding that a claimant suffers from a listed impairment results in an automatic finding of disability. See 20 C.F.R. § 416.920(d). The burden is on the claimant, however, to prove he satisfies the criteria for a listed condition. See Mills v. Apfel, 244 F.3d 1, 6 (1st Cir. 2001).

To prove a listed impairment under 12.05(C), Yearling must demonstrate: (1) significantly sub-average general intellectual functioning with defects in adaptive functioning that initially manifested prior to age 22, (2) a valid full scale IQ

performance of 60 through 70 and (3) that he suffers from a physical or other mental impairment imposing an additional and significant work related limitation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).

Here, the Commissioner concedes Yearling meets prong three. The record, however, contains no information on the onset of Yearling's infirmities prior to age 22. Thus, Yearling has not met his burden of proving he satisfies the prerequisites and the ALJ's conclusion that Yearling failed to meet prong one is supported by substantial evidence.

Further, the ALJ rejected Dr. Morocco's IQ test and diagnosis and also found Yearling did not meet the second requirement of a listed impairment under 12.05(C). Although Yearling contends the ALJ substituted his views for medical opinion, the ALJ does not have to accept IQ scores as conclusive if there is substantial evidence on the record from which to infer their unreliability. Soto v. Sec'y of Health & Human Servs., 795 F.2d 219, 221 (1st Cir. 1986).

The ALJ found substantial evidence on the record suggesting unreliability. Dr. Morocco examined Yearling on only one occasion and did not have the opportunity to view the consistency of Yearling's performance. The ALJ found Yearling failed to give sufficient effort during the examination and made inaccurate statements to Dr. Morocco. Yearling indicated his

hobbies included mentally taxing activities, such as constructing one's own motor vehicle, and the ALJ subsequently inferred that Dr. Morocco's analysis and diagnosis pertaining to Yearling's IQ score was inadequate. Because the ALJ's findings are supported by substantial evidence, this Court must affirm those findings, "even if the record arguably could justify a different conclusion." See Rodriguez-Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

**2. Residual Functional Capacity**

Yearling avers that the ALJ improperly used his lay knowledge to craft plaintiff's RFC. He claims the ALJ improperly relied on State Agency opinions, failed to consider new evidence regarding his health after the State Agency review and improperly assigned him a more restrictive RFC than justified by the opinions of the relied-upon medical testimony.

The ALJ found Yearling had the RFC to:

> perform light work as defined in 20 CFR 416.967(b) with the ability to sit for 6 hours a day and lift/carry 20 pounds occasionally and less than 10 pounds frequently, except he can only stand and/or walk for a total of 2 hours in an 8-hour day. He cannot operate foot controls with the left lower extremity. He can occasionally balance, stoop, kneel, and crouch. He can occasionally climb ramps or stairs but can never climb ladders, ropes, or scaffolds. He can never crawl. He can have no exposure to unprotected heights and cannot operate dangerous moving machinery. He is limited to performing simple, routine, and repetitive tasks that are not at a production rate pace. He can have occasional interaction with coworkers and supervisors, but not interaction with the public. He would require the option

to alternate between sitting and standing at 60-minute intervals allowing him to remain in the new position for 3 minutes before returning to the previous position but this would not require him to leave the work station.

In making that finding, the ALJ considered evidence from State Agency doctors, Wayne Draper and Mary Connelly, and gave their opinions great weight. They found Yearling was capable of performing light physical activity. The ALJ also gave great weight to the opinions of State Agency doctors, Mary Ford Clark and William Alexander, who concluded Yearling was mentally capable of performing simple tasks.

Yearling responds that those opinions are not substantial evidence because, unlike the opinions of Drs. Morocco, Meehan and other medical evidence on which Yearling relies, the State Agency doctors did not examine him. Non-examining opinions, however, can constitute substantial evidence. See Perry v. Astrue No. 11-40215, 2014 WL 4965910, at *5 (D. Mass. Sept. 30, 2014). Thus, the State Agency medical opinions constitute substantial evidence in support of the ALJ's RFC determination.

Yearling's complaint that the ALJ failed to consider new evidence related to the RFC is unpersuasive. Yearling submits that the ALJ erred because Dr. Clark did not have access to Dr. Morocco's IQ test and diagnosis but the ALJ had already rejected that evidence based upon substantial contradictory evidence in

the record as described above.  Thus, it is irrelevant that Dr. Clark did not have access to such information.

Finally, the ALJ did not commit reversible error in assigning Yearling a more restrictive RFC.  If the RFC includes greater limitations than those in a physician's assessment, such limitations cannot be used to discount the ALJ's determination. E.g., Carstens v. Comm'r of Soc. Sec., 12-1335, 2013 WL 3245224, at *6 (Concluding finding of medium work by definition includes ability to perform light work).  It follows that the ALJ did not err in assigning Yearling a more restrictive RFC than would have been justified by the opinions of the State Agency physicians.

This Court is bound to uphold the ALJ's findings where "a reasonable mind, reviewing the evidence in the record as a whole" is able to find that the ALJ's conclusion is adequately supported by the record. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  This Court finds adequate support in the record for the ALJ's findings and conclusion to deny Yearling SSI benefits.  Accordingly, it will affirm the Commissioner's decision.

**ORDER**

In accordance with the foregoing, plaintiff's motion to reverse the decision of the Commissioner (Docket No. 22) is **DENIED** and defendant's motion to affirm the decision of the Commissioner (Docket No. 27) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton<br>
Nathaniel M. Gorton<br>
United States District Judge

Dated: November 9, 2017